# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES FABIUS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:19CV2526 JCH |
| | ) | |
| MEDINEXO USA, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Ron Adelman's Motion to Dismiss Plaintiffs'

Complaint with Prejudice, filed November 14, 2019, and Defendants Medinexo USA, LLC's and

Jorge Toro's Motion to Dismiss, filed January 10, 2020. (ECF Nos. 32, 52). The motions are fully

briefed and ready for disposition.

## BACKGROUND[1]

Defendant Medinexo USA, LLC, is a limited liability company that provides a cloud-based

virtual care platform, or "doctor to doctor marketplace", through which hospitals, doctors, and

other practitioners can connect with other medical professionals and provide medical care to their

patients. (Compl., ¶¶ 3, 11). Medinexo purports to create a runway for telehealth expansion, by

dramatically lowering the barriers to the delivery of cost-effective telehealth services. (*Id.*, ¶ 13).

In 2016, after purportedly developing successfully operations in many other countries,

Medinexo began selling franchise opportunities in defined territories to prospective franchisees in

the United States. (Compl., ¶ 14). Plaintiff Charles Fabius first learned of Medinexo, and met

---

[1] The Court's background section is taken largely from Plaintiffs' Complaint, to which Defendants
have not yet filed an answer.

Defendants Jorge Toro (Medinexo's Founder, President, and CEO), and Ron Adelman (then Medinexo's Senior Vice-President of Sales and Marketing), when he attended the annual Franchise Expo in New York City in late-June, 2017. (*Id..*, ¶¶ 5, 7, 15, 16). At that time, Fabius had a background and experience in the telehealth business, having worked for several firms providing IT services and health and financial management applications to hospitals. (*Id.*, ¶ 17). He thus considered himself well qualified to own and operate the kind of franchised virtual healthcare business being sold by Defendants. (*Id.*).

According to Plaintiffs, during the initial meeting Defendants Toro and Adelman made several misrepresentations[2], including the following: (1) that during the first year of operation, Fabius would earn approximately $75,000; (2) that during the second year, he would earn approximately $400,000; and (3) that he "would make so much money" as a Medinexo franchisee that he would not consider renewing the franchise agreement after five years. (Compl., ¶ 20). Toro and Adelman further led Fabius to believe that Medinexo had previous sales data to support their claims. (*Id.*, ¶ 21). According to Plaintiffs, however, Toro and Adelman knew their representations were false and fraudulent, as they had no data from any previous franchise sales in the United States. (*Id.*, ¶ 22).

Fabius performed due diligence prior to making his franchise investment. (Compl., ¶ 24). He approached certain professions that performed analyses of franchised businesses, and retained counsel to review the form franchise agreement and Franchise Disclosure Document ("FDD") provided by Defendants in or about late July, 2017. (*Id.*, ¶¶ 24, 26).[3] Fabius personally reviewed

---

[2] Plaintiffs do not distinguish between Defendants Toro and Adelman when delineating the alleged misrepresentations and other misdeeds.

[3] An FDD is a legal document that a franchisor provides to a prospective franchise buyer during the pre-sale disclosure process. (Compl., ¶ 27). The Federal Trade Commission's Rule of 1979 governs these documents, and requires disclosure of essential information in the sale of franchises

the FDD, and reviewed and negotiated the Franchise Agreement directly with Defendants'

attorney.  (*Id.*, ¶ 33).  While certain issues concerning the franchise's lack of historical data

persisted, Fabius believed Defendants would provide the sound business model they promised in

their statements, literature, financial performance representations, and FDD.  (*Id*, ¶ 24).  He

ultimately decided to invest in the business, and formed Plaintiff FabCorpNY for the purpose of

operating a Medinexo franchise.  (*Id.*, ¶ 25).[4]

In or around September, 2017, Fabius signed a Franchise Agreement, and paid Defendants

a franchise fee of $49,500, for a "multi-regional Designated Territory."  (Compl., ¶ 42).[5]

According to Plaintiffs, despite the language contained in Medinexo's FDD Item 19, Defendants

provided additional written financial performance representations, "making specific

representations about and providing additional future revenue and expense 'projections.'"  (*Id.*, ¶

34).  Plaintiffs claim the Franchise Agreement incorporated by reference an attached "Budget

Example", that expressly stated earnings projections for the first two years of franchise operation.

(*Id.*, ¶ 35).[6]  Fabius alleges he subsequently learned the market data used for the projections was

_____

to the public.  (*Id.*).  Item 19 of Medinexo's FDD, an optional provision entitled "Earnings Claims",
stated as follows:  "We do not make any representations about a franchisee's future financial
performance or the past financial performance of company-owned or franchised outlets.  We also
do not authorize our employees or representatives to make any such representations either orally
or in writing."  (*Id.*, ¶ 32, quoting Medinexo FDD, attached as Exh. 1 to Plaintiffs FabCorpNY and
Charles Fabius' Memorandum of Law [in] Opposition to Defendant Ron Adelman's Motion to
Dismiss ("Plaintiffs' Adelman Opp."), ECF No. 40-1, P. 35).
[4] Fabius is the sole member of FabCorpNY.  (Compl., ¶ 25).
[5] Plaintiffs' territory consisted of the State of New York, the State of New Jersey, and the
Commonwealth of Pennsylvania.  (Compl., ¶ 43).
[6] Defendants note that while the Budget Example is labeled "Exhibit C", and Plaintiffs refer to it
as such in their submissions, the carve-out language on which Plaintiffs rely actually refers to
"Exhibit D."  (*See* Reply in Support of Defendants Medinexo USA, LLC's and Jorge Toro's
Motion to Dismiss, PP. 6-7, citing Franchise Agreement, attached as Exh. A to Defendant Ron
Adelman's Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Complaint with
Prejudice ("Adelman's Memo in Support"), ECF No. 33-1, P. 44).  The Court's review of the
record reveals other discrepancies in the Franchise Agreement, however.  For example, the

based on data from sales outside the United States, and further, that the data was deceptive, overstated and not based in facts. (*Id.*, ¶¶ 37, 38).

Plaintiffs began operating their franchise by contacting end-user physician clients, and sending those leads to Defendants in exchange for agreed-upon compensation. (Compl., ¶ 44). According to Plaintiffs, however, their efforts failed because Defendants provided neither the sales support nor the viable saleable product that was guaranteed under the Franchise Agreement. (*Id.*, ¶ 45). Plaintiffs incurred numerous additional expenses in connection with the operation of the business between September, 2017, and September, 2019, including capital infusion, various forms of advertising (recommended by Defendants), payroll, travel expenses, and legal fees. (*Id.*, ¶¶ 46, 48). As a result of Defendants' failure to comply with their obligations under the Franchise Agreement, including requirements that they provide Plaintiffs with training and guidance and make timely payments, Plaintiffs maintain they were forced to cease their formal operations as a Medinexo franchisee. (*Id.*, ¶¶ 48, 49).

Plaintiffs filed their Complaint in this matter on September 9, 2019. (ECF No. 1).[7] In their Complaint Plaintiffs assert the following causes of action: Violations of the New York State Franchise Sales Act ("NYFSA"), §§ 683 and 687 (Count I); Violations of the New Jersey Consumer Fraud Act ("NJCFA"), §§ 56.8-1, *et seq*. (Count II); Fraud in the Inducement (Count III); and Breach of Contract (Count IV). As stated above, Defendants filed the instant Motions to Dismiss on November 14, 2019, and January 10, 2020, claiming Plaintiffs' Complaint should be

---

provision "Release of Prior Claims", labeled Section 21 in the table of contents, does not appear anywhere in the Agreement, and as a result, the ensuing provisions are misnumbered. Under these circumstances, the Court finds an issue of fact remains as to whether the parties intended to reference Exhibit C in item 26 of their Franchise Agreement.

[7] Plaintiffs did so after unsuccessfully attempting to invoke the mediation provision contained in the Franchise Agreement. (Compl., ¶¶ 62-67).

dismissed in its entirety because Plaintiffs fail to allege facts plausibly establishing any claim against Defendants. (ECF Nos. 32, 52).

## STANDARD FOR MOTION TO DISMISS

In ruling on a motion dismiss, the Court must view the allegations in the complaint in the light most favorable to plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8ᵗʰ Cir. 2008). The Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8ᵗʰ Cir. 2005) (citation omitted). The complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," however, and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555 (pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

## DISCUSSION

### I.     Fraud In The Inducement

As noted above, in Count III of their Complaint Plaintiffs assert a claim for fraud in the inducement. (Compl., ¶¶ 86-92). Specifically, Plaintiffs allege as follows:

> 87.     In the initial meeting between Mr. Fabius and defendants Toro and Adelman, the defendants made several false, misleading and fraudulent statements and representations of material facts to him, including unsupported statements about the potential earning capacity as a [] Medinexo franchisee.

88.    Subsequently during the negotiation of the parties' franchise agreement, defendants again provided plaintiffs with false, misleading and fraudulent information in the form of a "Budget Example" that provided a completely fabricated two-year earnings projection.

(*Id.*, ¶¶ 87, 88).

Under Missouri law, in order to succeed on their claim for fraudulent inducement Plaintiffs must establish facts in support of the following elements:  "(1) that [Defendants] made certain material representations to [Plaintiffs]; (2) such representations were false when made; (3) that [Defendants] knew the representations were false; (4) that the representations were made with the purpose of deceiving [Plaintiffs]; (5) that [Plaintiffs were], in fact, deceived; (6) [Plaintiffs] reasonably relied on the representations in signing the [Franchise Agreement]; and (7) [Plaintiffs] suffered damage as a proximate result of the fraudulent misrepresentations."  *Bracht v. Grushewsky*, 448 F.Supp.2d 1103, 1110 (E.D. Mo. 2006) (citing *Trotter's Corp. v. Ringleader Restaurants, Inc.*, 929 S.W.2d 935, 939 (Mo. App. 1996)).  "As with any cause of action, '[a] failure to establish any one of the essential elements of fraud is fatal to recovery.'" *Argus Health Systems, Inc. v. Benecard Services, Inc.*, No. 10-00187-CV-W-JTM, 2011 WL 5570064, at *2 n. 4 (W.D. Mo. Nov. 16, 2011) (quoting *Emerick v. Mutual Benefit Life Ins. Co.*, 756 S.W.2d 513, 519 (Mo. 1988) (en banc)).

In their Motions to Dismiss, Defendants claim Plaintiffs' fraud in the inducement claim is subject to dismissal for several reasons.  The Court will address Defendants' assertions in turn.

**A.  Statements Made At The Franchise Expo**

As noted above, Plaintiffs assert Defendants stated at the Franchise Expo that, during the first year of operation Fabius would earn approximately $75,000, during the second year he would earn approximately $400,000, and he "would make so much money" as a Medinexo franchisee

that he would not consider renewing the franchise agreement after five years. (Compl., ¶ 20). In their Motions to Dismiss Defendants argue these alleged misrepresentations are not actionable, because they constituted "mere puffery." (*See* Adelman's Memo in Support, P. 6; Memorandum in Support of Defendants Medinexo USA, LLC's and Jorge Toro's Motion to Dismiss ("Medinexo's Memo in Support"), PP. 5-6).

Under Missouri law, "predictions of future success and profitability…are not misrepresentations of past or existing fact and cannot be the subject of a fraud action." *Trotter's Corp.*, 929 S.W.2d at 940.

> To constitute fraud, the alleged misrepresentation must relate to a past or existing fact. Mere statements of opinion, expectations, and predictions for the future are insufficient to authorize a recovery for fraudulent misrepresentation. In particular, predictions and opinions regarding future profitability of a business cannot form a basis for fraud as a matter of law.

*Id.* (citations omitted). *See also Morrison v. Back Yard Burgers, Inc.*, 91 F.3d 1184, 1186 (8th Cir. 1996) (applying Arkansas law[8], and holding that representations relating solely to future events, such as projections related to franchise profits, cannot support an action for fraud); *VT Investors v. R & D Funding Corp.*, 733 F.Supp 823, 837-38 (D. N.J. 1990) (holding a statement that the company in which plaintiffs invested would "in the near future, realize a positive cash flow in excess of $60,000 per month", could only be characterized as non-actionable puffery "because it is such an emphatic statement of opinion").

In response to Defendants' motions Plaintiffs do not dispute, but rather appear to concede, that the statements regarding potential profitability allegedly made during the Franchise Expo cannot serve as the basis for a claim of fraud, as they constituted at most puffery on Defendants'

---

[8] Although *Morrison* involved Arkansas law, the Court finds no reason to believe Missouri courts would hold differently.

part. Specifically, Plaintiffs claim they do not allege only that Defendants "made vague statements of potential[] profitability *that in some circumstances could amount to mere 'puffery'*; rather defendants provided what appeared to be an empirical analysis in support of these representations and agreed to append them to the parties' agreement." (Plaintiffs' Adelman Opp., P. 12 (emphasis added), citing Franchise Agreement, Exh. C, "Budget Example").[9]

Upon consideration, the Court agrees the statements allegedly made at the Franchise Expo constituted mere puffery, insufficient to sustain a claim of fraud in the inducement. The Court finds this to be especially true because, as noted by Defendant Adelman, Plaintiffs allege Defendants made the initial profit representations "without knowledge of Plaintiffs' business plans, experience, and expected level of investment in the franchise." (Adelman's Memo in Support, P. 7). Under these circumstances, this portion of Defendants' Motions to Dismiss will be granted.

B. **Misrepresentations Made During the Negotiation And Execution Of The Franchise Agreement**

As noted above, in their Complaint Plaintiffs further allege that during the negotiation of the Franchise Agreement, Defendants provided "**additional written financial performance representations**, once again, making specific representations about and providing additional future revenue and expense 'projections.'" (Compl., ¶ 34 (emphasis in original)). Plaintiffs claim the executed Franchise Agreement incorporated by reference one such representation, a "Budget Example" expressly stating earnings projections for the first two years of franchise operation. (*Id.*, ¶ 35). Plaintiffs maintain Defendants included said projections despite knowing that the data as provided was deceptive, overstated and not based in facts. (*Id.*, ¶¶ 36-38).

---

[9] The referenced empirical analysis, allegedly appended to the parties' agreement, is addressed in section I(B)(2), *infra*.

In their Motions to Dismiss, Defendants assert that with these allegations Plaintiffs fail to state a claim for relief, for two reasons.

1. **The Alleged Statements Attributed To The Various Defendants Are Not Pleaded With Sufficient Particularity**

Allegations of fraud are subject to a heightened pleading requirement under Federal Rule of Civil Procedure 9(b), which states in relevant part as follows: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To meet the requirements of Rule 9(b), a pleading must include "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001) (internal quotations and citations omitted). "In other words, the complaint must plead the who, what, where, when, and how of the alleged fraud." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (internal quotations and citations omitted).

In their Motions to Dismiss, Defendants contend Plaintiffs' fraud in the inducement claim fails because they rely on collective allegations rather than individualized statements of fact. (Adelman's Memo in Support, P. 5; Medinexo's Memo in Support, P. 8). In other words, Defendants claim Plaintiffs impermissibly attribute the alleged misrepresentations to Defendants Toro and Adelman together, without specifying which individual in fact made the statements or provided the allegedly fraudulent materials. (*Id.*).

In their response to Defendants' motions, Plaintiffs do not deny that they group Defendants Adelman and Toro together in their fraud in the inducement claim. (*See, e.g.,* Plaintiffs' Adelman Opp., PP. 12-13). Instead, Plaintiffs persist in their failure to distinguish between Defendants, stating that "at the initial meeting between Mr. Fabius and defendants Toro and Adelman, *the*

*defendants* made three very specific statements regarding potential profitability and/or financial success as a franchisee []." (*Id.*, P. 12 (emphasis added)).

Upon consideration, the Court finds Plaintiffs have not stated their claim for fraud in the inducement with sufficient particularity to satisfy the heightened pleading requirements of Rule 9(b). *See Level One Technologies, Inc. v. Penske Truck Leasing Co., L.P.*, No. 4:14CV1305 RWS, 2015 WL 1286960, at *7-8 (E.D. Mo. Mar. 20, 2015). This failure becomes especially important in light of Defendant Adelman's contention that he is not specifically alleged to have had any involvement in the supposed "financial performance representations", or provision of the "Budget Example", the sole remaining instances of purported fraud. (*See* Adelman's Memo in Support, P. 6). Rather than dismiss Plaintiffs' Complaint outright, however, the Court will grant Plaintiffs leave to file an Amended Complaint, in which they state with particularity the misrepresentations attributable to each Defendant.

## 2. <u>Any Purported Reliance By Plaintiffs Was Not Reasonable</u>

Defendants finally argue that Plaintiffs' fraud in the inducement claim is subject to dismissal because Plaintiffs could not reasonably have relied on Defendants' speculative approximations of future performance. (Adelman's Memo in Support, PP. 7-8; Medinexo's Memo in Support, PP. 6-9). As support for this contention, Defendants note Plaintiffs allege the following in their Complaint: that at that time he encountered Defendants, Fabius had a background and experience in the telehealth business, and considered himself well qualified to own and operate the kind of franchised virtual healthcare business being sold by Defendants (Compl., ¶ 17); that Fabius performed due diligence prior to making his franchise investment, including approaching certain professions that performed analyses of franchised businesses, and retaining counsel to review the form franchise agreement and FDD provided by Defendants (*Id.*, ¶ 24); that Item 19 of Medinexo's

FDD specifically stated that neither Medinexo nor its employees made any representations about a franchisee's future financial performance or past financial performance of company-owned or franchised outlets (*Id.*, ¶ 32); and that Fabius himself acknowledged lingering concerns regarding Medinexo's lack of historical data (*Id.*, ¶ 24).

Upon consideration, the Court finds an issue of fact remains as to whether Plaintiffs' alleged reliance on representations made by Defendants was reasonable. The Court notes Item 26 of the parties' Franchise Agreement provides in relevant part as follows: "*Other than Exhibit D hereto*, You have not relied on any warranty or representation or guaranty, expressed or implied, as to the potential success or projected income or profits of the business venture contemplated hereby, and You acknowledge that, *other than Exhibit D hereto*, Our sales staff, personnel, employees, officers and representatives are not permitted to make claims or statements as to earnings, sales, income, profits, prospects or chances of Your success that are not disclosed in Our Franchise Disclosure Document, nor are they authorized to represent or estimate sales figures as to any particular franchise." (*See* Franchise Agreement, ECF No. 33-1, P. 44 (emphasis added)). The Court agrees with Plaintiffs that the quoted provision creates an issue of fact as to whether the parties carved out an exception to Item 19 of Medinexo's FDD, sufficient to permit Plaintiffs reasonably to rely on the Budget Example as a projection of future income and expenses. While it ultimately may prove difficult for Plaintiffs to demonstrate the requisite reasonable reliance in light of Fabius's admitted expertise in the subject matter at issue, his engagement in extensive due diligence, his review of the disclosure documents, his participation in the negotiation of the integrated Franchise Agreement, and his execution of the Franchise Agreement despite his admitted concerns regarding Medinexo's lack of historical data, the Court finds it inappropriate to

deem such reliance absent as a matter of law at this time.  This portion of Defendants' Motions to Dismiss will therefore be denied.

## II.     New York Franchise Sales Act Violations

As stated above, in Count I of their Complaint Plaintiffs assert Defendants violated various provisions of the NYFSA.  (Compl., ¶¶ 68-76).  Specifically, Plaintiffs assert violations of NYFSA § 683, which prohibits any person from "offer[ing] to sell or sell[ing] in [New York] state any franchise unless and until there shall have been registered with the department of law, prior to such offer or sale, a written statement to be known as an 'offering prospectus' concerning the contemplated offer or sale, which shall contain the information and representations set forth in and required by this section" (N.Y. Gen. Bus. Law § 683(1)); and § 687, which makes it "unlawful for a person, in connection with the offer, sale or purchase of a franchise, to directly or indirectly:  (a) Employ any device, scheme, or artifice to defraud; (b) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading…. [or] (c) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."  (N.Y. Gen. Bus. Law § 687(2)).

In their Motions to Dismiss, Defendants claim Plaintiffs' NYFSA claims are subject to dismissal for several reasons.  The Court will address Defendants' assertions in turn.

### A.  The NYFSA Does Not Apply To The Subject Franchise Sale

In their Motions to Dismiss, Defendants note the sole allegation supporting application of the NYFSA to the subject franchise sale states as follows:  "Plaintiff FabCorpNY is a limited liability company with a principal office located in the State of New York."  (Adelman's Memo in Support, P. 9, quoting Compl., ¶ 69).  Defendants maintain this allegation is insufficient to bring

the sale within the purview of the NYFSA, as the Act applies only when "an offer to sell is made in [New York], or an offer to buy is accepted in [New York], or, *if the franchisee is domiciled in this state, the franchised business is or will be operated in [New York]*." (*Id.*, quoting N.Y. Gen. Bus. Law § 681(12)(a) (emphasis added)). Defendants maintain Plaintiffs claim neither that Defendants offered to sell them a franchise in New York, nor that Plaintiffs purchased the franchise in New York. (*Id.*). Instead, Defendants assert Plaintiffs mistakenly rely on FabCorpNY's state of formation (New York), and the alleged location of its principal office in New York, as a basis to establish the franchisee's domicile in New York. (*Id.*, PP. 9-10).[10]

In response to Defendants' motions Plaintiffs assert, among other things, that the sale at issue here "originated from the parties' in-person meeting at the 'Franchise Expo.'" (Plaintiffs' Adelman Opp., P. 7; Plaintiffs Charles Fabius' and FabCorpNY, LLC's Memorandum of Law [in] Opposition to Defendants Medinexo USA, LLC and Jorge Toro's Motion to Dismiss ("Plaintiffs' Medinexo Opp."), P. 7).[11] Plaintiffs further note the "Governing Law" provision in the parties' Franchise Agreement states in relevant part as follows: "'Notwithstanding anything herein to the contrary, this Section 23 is not intended to waive or otherwise diminish Your rights under the New

---

[10] Specifically, Defendants maintain FabCorpNY is not domiciled in New York, because a limited liability corporation's citizenship is determined by the residence of its members, and Mr. Fabius is a New Jersey resident. (Adelman's Memo in Support, P. 10). Defendants further note that the Franchise Agreement itself provided that FabCorpNY's principal place of business at the time of execution was in New Jersey. (*Id.*, quoting Franchise Agreement, ECF No. 33-1, P. 4).

[11] New York Gen. Bus. Law § 681(12) provides in its entirety as follows:
  (a) An offer or sale of a franchise is made in this state when an offer to sell is made in this state, or an offer to buy is accepted in this state, or, if the franchisee is domiciled in this state, the franchised business is or will be operated in this state.
  (b) An offer to sell is made in this state when the offer either originated from this state or is directed by the offeror to this state and received at the place to which it is directed. An offer to sell is accepted in this state when acceptance is communicated to the offeror from this state.

York Franchise Sales Act,…or other, applicable state laws.[12] To this end, the Parties acknowledge that You are a New York limited liability company, domiciled in New York…'" (*Id.*, P. 7, quoting Franchise Agreement, ECF No. 33-1, P. 40).

Upon consideration the Court finds Plaintiffs' allegations create an issue of fact as to whether the NYFSA applies, sufficient to defeat Defendants' Motions to Dismiss.[13] Plaintiffs are instructed to amend their NYFSA claims, however, to include the allegations supporting their claim of jurisdiction under the NYFSA that Defendants complain are missing.

## B. Defendant Adelman Played An Immaterial Role In The Franchise Sale

Defendant Adelman next asserts he is not subject to liability under the NYFSA, because he played an immaterial role in the franchise sale. (Adelman's Memo in Support, PP. 10-11). Adelman notes that other than the alleged joint statements at the Franchise Expo, he is not alleged to have had any further role, material or otherwise, in Plaintiffs' decision to pursue the Franchise Agreement. (*Id.*, P. 11).

Upon consideration, the Court will deny this portion of Defendant Adelman's Motion to Dismiss without prejudice. As noted above, Plaintiffs' failure to attribute alleged misrepresentations to individual Defendants is especially important in light of Adelman's contention that he is not specifically alleged to have had any involvement in the supposed "financial performance representations" or provision of the "Budget Example", the sole remaining instances of purported fraud. Again, however, rather than dismiss Plaintiffs' Complaint outright

---

[12] The parties' Governing Law provision further provides that any law governing the relationship would not apply unless its jurisdictional requirements were met independently, without reference to the section.

[13] Defendants remain free to renew their claim on summary judgment, when the Court has a full record before it.

the Court will grant Plaintiffs leave to file an Amended Complaint, in which they allege with

particularity the misrepresentations attributable to each Defendant.

### C. Plaintiffs' Claimed Violation Of Section 683 Cannot Stand

As noted above, in their Complaint Plaintiffs assert a violation of NYFSA § 683, which

prohibits any person from "offer[ing] to sell or sell[ing] in [New York] state any franchise unless

and until there shall have been registered with the department of law, prior to such offer or sale, a

written statement to be known as an 'offering prospectus' concerning the contemplated offer or

sale, which shall contain the information and representations set forth in and required by this

section." (N.Y. Gen. Bus. Law § 683). In their Motions to Dismiss Defendants assert that, even

assuming they violated § 683 by failing to register an offering prospectus with the State of New

York, Plaintiffs' claim nevertheless fails because they cannot establish any damages resulting from

said omission. (*See* Adelman's Memo in Support, PP. 11-12; Medinexo's Memo in Support, PP.

12-13).

Upon consideration, the Court agrees Plaintiffs fail to explain how their alleged damages

resulted from Defendants' failure properly to register with the State of New York. Rather than

dismiss the claim outright, however, the Court will grant Plaintiffs leave to file an Amended

Complaint specifically addressing this issue.[14]

### III.    New Jersey Consumer Fraud Act Claim

As noted above, in Count II of their Complaint Plaintiffs allege violations of the New Jersey

Consumer Fraud Act ("NJCFA"). (Compl., ¶¶ 77-85). Specifically, Plaintiffs maintain

Defendants' alleged deceptive and unconscionable commercial practices in connection with the

---

[14] Defendants' remaining arguments with respect to Plaintiffs' NYFSA claims, *i.e.*, that Plaintiffs
fail to allege an actionable representation, and that Plaintiffs' reliance on the purported
representation was unreasonable, were addressed in sections I(A) and I(B)(2), *supra*.

sale of the development agreement and franchise to Plaintiffs constitute a basis to bring a claim under the NJCFA. (*Id.*, ¶¶ 82, 83).

In their Motions to Dismiss, Defendants assert the NJCFA does not apply to the sale of the franchise to Plaintiffs. (Adelman's Memo in Support, PP. 13-14; Medinexo's Memo in Support, PP. 13-14). Under the NJCFA,

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise….whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice…

N.J. Stat. Ann. § 56:8-2. The Act defines "person" to include "any natural person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestuis que trustent thereof." N.J. Stat. Ann. 56:8-1(d). It defines "merchandise" to include "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J. Stat. Ann. 56:8-1(c).

In *J & R Ice Cream Corp. v. CA Smoothie Licensing Corp.*, 31 F.3d 1259 (3d Cir. 1994), the Third Circuit specifically addressed the issue of whether the NJCFA applies to franchises. It held that "the Consumer Fraud Act was aimed basically at unlawful sales and advertising practices designed to induce consumers to purchase merchandise or real estate." *Id.* at 1272 (internal quotations and citation omitted). The Court continued to hold as follows:

> We conclude that even where franchises or distributorships are available to the public at large in the same sense as are trucks, boats or computer peripherals, they are not covered by the Consumer Fraud Act because they are businesses, not consumer goods or services. They never are purchased for consumption Instead, they are purchased for the present value of the cash flows they are expected to produce in the future and, like the technology and services acquired in *BOC Group*,

bear no resemblance to the commodities and services listed in the statutory definition of "merchandise" or the rules promulgated by the Division of Consumer Affairs.

*Id.* at 1274 (footnotes omitted).

Plaintiffs cite to *Kavky v. Herbalife Intern. of Am.*, 820 A.2d 677 (N.J. Super. Ct. App. Div. 2003), a case in which a New Jersey state court carved out a narrow exception to the rule enunciated in *J & R Ice Cream*. As explained by the United States District Court for the District of New Jersey, however,

> [T]he situation in *Kavky* is factually distinguishable from the present case. There, the franchisor used general advertising over the Internet to solicit distributors for a variety of products it sold in the United States. Specifically, the franchisor's offer was to make anyone a distributor in return for $85 and to provide Pre-Paid Retail Internet Customers at $8.50 per customer. In a situation that involved such mass-marketing to the public, the purchaser's role in *Kavky* was more akin to that of a traditional consumer than a franchisee.

*Wingate Inns Intern., Inc. v. Swindall*, No. 12-248 (CCC), 2012 WL 5252247, at *4 (D. N.J. Oct. 23, 2012) (internal quotations and citations omitted). In contrast, here, Plaintiffs engaged professionals to analyze the franchise opportunity and review the provided documentation, before paying a large sum of money for a "multi-regional Designated Territory." The Court agrees with Defendants that this sequence of events hardly qualifies as a financial transaction that was either mass-produced or consumer-oriented. *Kavky* thus is inapposite to the instant case[15], and so Defendants' Motions to Dismiss Plaintiffs' NJCFA claim will be granted. *See also Lawmen Supply Co. of New Jersey, Inc. v. Glock, Inc.*, 330 F.Supp.3d 1020, 1045 (D. N.J. 2018) (internal

---

[15] Even the Court in *Kavky* did not disagree with the result reached in *J & R,* but "only because it appears to have involved a substantial and complex commercial transaction, which likely fell within the Franchise Practices Act. We cannot endorse *J & R's* reasoning because that course would deprive the citizens of New Jersey of protection of the Act in pyramid sales schemes, and similar mass public frauds, a consequence we believe the State Supreme Court would reject." *Kavky*, 820 A.2d at 679-80.

quotations and citations omitted) ("Although the New Jersey Superior Court, Appellate Division has criticized the holding in *J & R*, the majority of courts in this district have followed the Third Circuit's interpretation of the NJCFA.").[16]

## IV.    <u>Breach Of Contract Claim[17]</u>

Under Missouri law, a "'breach of contract action includes the following essential elements:  (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff.'"  *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 850 (8th Cir. 2014) (quoting *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010) (en banc)).  The burden of proof rests with the party claiming breach of contract, and if said party fails to prove one element, its claim fails.  *See Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC*, 784 F.3d 1183, 1189 (8th Cir. 2015); *HM Compounding Services, LLC v. Express Scripts, Inc.*, 349 F.Supp.3d 781, 790 (E.D. Mo. 2018).

In its Motion to Dismiss Medinexo asserts that Plaintiffs fail to plead the second element, *i.e.*, that they fulfilled all their duties and obligations under the Franchise Agreement.  (Medinexo's Memo in Support, PP. 14-15).  Plaintiffs respond as follows:

> Here, Plaintiffs have alleged the existence and terms of the parties' franchise agreement (which has been provided to the court), the obligations of Medinexo thereunder, the alleged breach by Medinexo of its obligations, and resulting damages.  Compl., Doc 1, ¶¶ 42-51.  Notably, there is no allegation or claim by any of the Defendants that Plaintiffs breached the subject agreement, did not comply with its terms or otherwise defaulted on any obligation(s) owed to Medinexo or any other defendant.

---

[16] In light of the above ruling, the Court need not consider Defendants' other arguments in favor of dismissal of Count II.

[17] Plaintiffs concede the dismissal of Count IV as to Defendants Adelman and Toro.  (*See* Plaintiffs' Adelman Opp., P. 15; Plaintiffs' Medinexo Opp., P. 13).

(Plaintiffs' Medinexo Opp., P. 13).

Upon consideration, the Court agrees with Medinexo that Plaintiffs' failure to allege its own performance under the Franchise Agreement is fatal to its claim. The Court will, however, afford Plaintiffs a chance to plead the claim successfully in their Amended Complaint.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED that** Defendant Ron Adelman's Motion to Dismiss Plaintiffs' Complaint with Prejudice, and Defendants Medinexo USA, LLC's and Jorge Toro's Motion to Dismiss (ECF Nos. 32, 52) are **GRANTED** in part and **DENIED** without prejudice in part, in accordance with the foregoing.

**IT IS FURTHER ORDERED that** Plaintiffs are granted until **Friday, April 17, 2020**, within which to file an Amended Complaint.

Dated this ___3rd___ Day of April, 2020.

\s\ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE
